UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:   CHERYL THORP,                                      No. 20-11632-j7

Debtor.

## **MEMORANDUM OPINION**

Two creditors, Santa Fe Community Housing Trust ("SF Housing Trust") and Zocalo

Association, Inc. ("Zocalo"), seek relief from the automatic stay to enforce their interests in a

condominium located at 1340 Avenida Rincon, #302 (the "Property") owned by the Debtor,

Cheryl Thorp.[1] Debtor opposes stay relief, arguing, among other things, that the Debtor has

equity in the Property, that the lien and right of first refusal set forth in the agreement that forms

the basis of SF Housing Trust's claim have been discharged in a prior bankruptcy case, and that

the Property may be necessary to Debtor's financial success post-bankruptcy.[2] The Court held a

---

[1] *See* Motion for Relief from Stay (Doc.11) filed by SF Housing Trust; Secured Creditor Zocalo
Association, Inc's Motion for Relief from the Automatic Stay (Doc. 20).

[2] Debtor also asserts that the motions for relief from stay are procedurally defective because SF Housing
Trust and Zocalo did not serve their motions on all creditors and parties in interest. *See* Doc. 27 and Doc.
30. Federal Rule of Bankruptcy Procedure 4001(a) establishes procedures for motions seeking relief from
the automatic stay. It provides:

> A motion for relief from an automatic stay provided by the Code . . . shall be made in
> accordance with Rule 9014 and shall be served on any committee elected pursuant to § 705
> or appointed pursuant to § 1102 of the Code or its authorized agent, or, if the case is a
> chapter 9 municipality or a chapter 11 reorganization case and no committee of unsecured
> creditors has been appointed pursuant to § 1102, on the creditors included on the list filed
> pursuant to Rule 1007(d), and on such other entities as the court may direct.

Under Federal Rule of Bankruptcy Procedure 9014(a), relief must be requested by motion, and the party
against whom relief is sought must have reasonable notice and an opportunity for a hearing before relief
can be granted. Federal Rule of Bankruptcy Procedure 9013 requires service of a motion by the moving
party on "the trustee or debtor in possession and on those entities specified by these rules" or on the
entities as directed by the court if the Rules "do not require service or specify the entities to be served."
Fed.R.Bankr.P. 9013(a) and (b). Both motions for relief from stay state that the motion "was served by
the CM/ECF electronic filing system to the mailing matrix in this case and also by first class mail to" the
debtor, her counsel of record, and the chapter 7 Trustee. *See* Doc. 11 and Doc. 20. In this chapter 7 case
where no creditor committee has been elected, and the Court has not directed service on other entities,
service of the motions for relief from stay by mail and through the Court's electronic filing system on the
debtor, debtor's counsel, and the chapter 7 trustee was sufficient.

final evidentiary hearing on October 21, 2020 and took the matter under advisement. After considering the evidence, the Court concludes that although the creditors have not met their burden of proof as to the Debtor's equity in the Property, the totality of the circumstances establishes "cause" for relief from the automatic stay.

FINDINGS OF FACT

A.     <u>Debtor's Four Bankruptcy Cases.</u>

Debtor commenced this bankruptcy case under chapter 7 of the Bankruptcy Code on August 17, 2020. Debtor listed the claims of SF Housing Trust and Zocalo on Schedule D as disputed and contingent claims relating to a judgment lien from a lawsuit. *See* Exhibit 5. The Debtor scheduled the Property with a current value of $239,000. *Id.* Debtor is currently employed at CVS Pharmacy as a cashier earning $650.00 monthly. *Id.*

Debtor has filed three prior bankruptcy cases in New Mexico.[3] She commenced her first bankruptcy case by filing a voluntary petition under chapter 7 of the Bankruptcy Code on July 1, 2004, as Case No. 04-14871-j7. *See* Exhibit 7. In the first bankruptcy case, Debtor scheduled the Property with a value of $220,000, and identified a "HOP Lein" [sic.] on Schedule D in the amount of $102,045.00. *Id.* Schedule D also lists two secured claims against the Property held by SF Housing Trust, one for $10,000, and one for $2,000. *Id.* Debtor was granted a discharge on October 18, 2004 and the case was closed the same day.

Debtor filed a second voluntary chapter 7 petition on August 12, 2012 as Case No. 12-13033-t7. *See* Exhibit 8. Debtor scheduled the Property with a value of $239,000 and again identified a HOP Lien on Schedule D in the amount of $102,045.00. *Id.* Debtor received a discharge in her second bankruptcy case on February 4, 2013 and the case was closed that day.

---

[3] With the parties' consent, the Court took judicial notice of the documents filed of record on the docket of the Debtor's three prior bankruptcy cases.

-2-

At Debtor's request, the first and second bankruptcy cases were reopened in March of 2018.[4] Debtor filed a motion asking the Court to reimpose the automatic stay to stay prosecution of a foreclosure action on appeal to the New Mexico Supreme Court and to stay an action pending in federal district court.[5] The foreclosure action and action pending in federal district court are both discussed below. On July 31, 2018, this Court denied the motion to reimpose the automatic stay on the ground that the Court does not have the authority to reimpose the automatic stay as requested.[6] Following entry of an order denying Debtor's motion to hold SF Housing Trust in contempt for violating the discharge injunction, the bankruptcy cases were reclosed on December 13, 2018.

Debtor commenced a third bankruptcy case on August 9, 2019 by filing a petition for relief under chapter 13 on August 9, 2019. *See* Case No. 19-11854-t7. While a motion to dismiss the chapter 13 case was pending, Debtor filed a notice of conversion of the case to chapter 7 on January 21, 2020. On April 9, 2020, Zocalo filed a motion for relief from stay to permit it to enforce its lien against the Property. While Zocalo's motion for relief from stay was pending, the Court closed the bankruptcy case on June 23, 2020 without granting Debtor a discharge. Debtor was not eligible for a chapter 7 discharge because she had been granted a chapter 7 discharge within eight years prior to the commencement of her third bankruptcy case. The closing of the bankruptcy case rendered Zocalo's motion for relief from stay moot.[7] Within two months after the

---

[4] *See* Case No. 04-14871-j7, Doc. 14; Case No. 12-13033-t7, Doc. 28. The cases were then jointly administered under Case No. 04-14871-j7. *See* Case No. 04-14871-j7, Doc. 27.
[5] *See* Case No. 04-14871-j7, Doc. 18 and Doc. 28.
[6] *See* Case No. 04-14871-j7, Doc. 30.
[7] The closing of the case terminated the automatic stay by operation of the Bankruptcy Code. *See* 11 U.S.C. § 362(c)(2)(A). All future statutory references are to title 11 of the United States Code, unless otherwise noted.

-3-

third bankruptcy case was closed, Debtor commenced the bankruptcy case now pending before the Court.

B.   <u>Debtor's Purchase of the Property</u>

In 2002, Debtor purchased the Property as part of the City of Santa Fe's Housing Opportunity Program. In connection with her purchase of the Property, Debtor signed a City of Santa Fe Inclusionary Zoning Housing Opportunity Program Resale Agreement ("Homeowner HOP Agreement") that was recorded in the real property records of Santa Fe County. *See* Exhibit 2. The Closing Statement prepared for the sale of the Property to Debtor has a line item for a "HOP Lien" in the amount of $102,045.00. *See* Exhibit 1. The Debtor purchased the Property for a contract sales price of $219,646.00. *Id.* In December of 2009, the City of Santa Fe assigned its interest in the Homeowner HOP Agreement to the SF Housing Trust *See* Assignment–Exhibit 3. The Assignment was recorded in the real property records of the County of Santa Fe on March 24, 2010. *Id.*

To purchase the Property, Debtor obtained a loan from Major Mortgage in the amount of $107,570, secured by a mortgage on the Property. Major Mortgage later assigned the loan and mortgage to Matrix Financial Services ("Matrix"), which in turn later assigned the loan and mortgage to the SF Housing Trust.[8] When she purchased the Property, the Debtor also signed a mortgage in favor of the SF Housing Trust in the amount of $10,000. *See* Exhibit 1.

Zocalo is a New Mexico non-profit corporation that manages the Zocalo Condominium project where the Property is located. Zocalo assesses monthly fees to the property owners in the

---

[8] After Matrix obtained a foreclosure judgment against the Property the SF Housing Trust obtained an Assignment and Transfer of Judgment, Mortgage and Promissory Note ("Assignment of Judgment") from Matrix in December of 2018. *See* Exhibit 13. SF Housing Trust paid $141,748.07 in consideration for the Assignment of Judgment. *Id.* The Assignment of Judgment was recorded in the real property records of Santa Fe County on January 23, 2019. *Id.*

-4-

Zocalo Condominium project. The fees are used to preserve and maintain the common areas in the project, including a pool and fitness center; for the operation of Zocalo; and as a reserve. Debtor has not made any payments on the first mortgage against the Property (now held by SF Housing Trust, as Matrix's assignee), to SF Housing Trust on its junior mortgage, or to Zocalo since at least 2016.

C.    Whether Debtor has Equity in the Property

The HOP Homeowner Agreement contemplates three scenarios in which the Property may be sold: (1) in a foreclosure sale, (2) upon the City of Santa Fe's exercise of the right of first refusal, or (3) by the Debtor in a voluntary sale. The Court will make findings of fact relevant to whether Debtor has equity in the Property under any of these scenarios.

(1)    Sale of the Property through Foreclosure

In 2016, Matrix initiated foreclosure proceedings against the Debtor, SF Housing Trust, and Zocalo in state court to obtain an *in rem* judgment against the Property. As part of that litigation, SF Housing Trust and Zocalo asserted cross-claims. The state court entered an Amended Summary Judgment, Decree of Foreclosure, and Appointment of Special Master (the "State Court Judgment") on January 19, 2018. *See* Exhibit 4. The State Court Judgment granted judgment in favor of Matrix, SF Housing Trust, and Zocalo as follows:

| Matrix | $138,970.42 | Principal of $115,188.21, interest at 2% through June 1, 2017, taxes, other charges, costs and attorneys' fees; plus interest thereafter at the rate of 2% per year |
|--------|-------------|---------------------------------------|
| SF Housing Trust | $19,373.97 | Principal of $10,000, plus interest at 15% through December 14, 2017 |
| Zocalo | $27,662.69 | Unpaid condominium assessments, plus reasonable attorney's fees |
| **TOTAL** | **$ 186,007.08** | |

*Id.* Debtor does not currently have $186,000.

-5-

The State Court Judgment authorized the sale of the Property by special master "free and clear of all liens of the parties hereto and of all persons claiming an interest by virtue of any instrument filed for record after . . . the date and time Plaintiff recorded its Notice of Lis Pendens in the records of Santa Fe County, New Mexico." State Court Judgment, Decretal ¶ L. The State Court Judgment provides further that the sale of the Property is subject to a one month right of redemption. *Id.* The State Court Judgment includes a finding that the SF Housing Trust "has exercised its right to purchase the subject property pursuant to the HOP Agreement." State Court Judgment, ¶ 3.E. The state court declined to otherwise construe the provisions of the Homeowner HOP Agreement, stating "This Court does not pass on the specific provisions of the HOP Agreement and finds that its enforcement involves a collateral proceeding which may be pursued in a separate litigation." State Court Judgment, ¶ 4. The Debtor appealed the State Court Judgment to the New Mexico Court of Appeals. The appeal remains pending.

Notably, the State Court Judgment provides for a foreclose sale free and clear of all liens held by the parties to the foreclosure action, which would include the HOP Lien, without any right on the part of the holder of the HOP Lien to credit bid the amount of the lien.[9]

Since the entry of the State Court Judgment, interest has continued to accrue on the judgment in favor of Zocalo at the rate of 8.75% per year, and assessments on the Property have continued to accrue. Zocalo's records show that a total of $27,475.20, consisting of assessments and attorneys' fees from February 2018 to June 1, 2020 remain due. *See* Zocalo–Exhibit 6.

---

[9] It does not appear that the Homeowner HOP Agreement contemplates extinguishment of the HOP Lien in a foreclosure sale without the holder of the HOP Lien having the right to credit bid the amount of the HOP Lien. The Homeowner HOP Agreement simply subordinates the HOP Lien to the first mortgage lien held by the lender that financed the HOP Homebuyers' purchase of the Property. *See* Homeowner HOP Agreement, ¶ 2.2. It further provides that any purchaser receiving title through a foreclose sale of the senior lender "other than the HOP Homebuyer or a related entity of the HOP Homebuyer," will receive title to the Property free and clear of the HOP Lien. *Id.* Nevertheless, the State Court Judgment, which is final, does not so provide.

-6-

However, a foreclosure sale under the State Court Judgment would be free and clear of any lien Zocalo could file for these additional assessments.

The Debtor filed this this bankruptcy case under chapter 7 of the Bankruptcy Code on August 17, 2020. Debtor scheduled the Property with a value of $239,000. *See* Exhibit 5. Debtor's admission of value is the only evidence of the current value of the Property before the Court.[10] Without considering the HOP Lien or SF Housing Trust's right of first refusal, the secured debt against the Property is up to $216,261.02, consisting of the following:

| Amount | Description |
| --- | --- |
| $141,748.07 | Matrix mortgage assigned to SF Housing Trust |
| $19,373.97 | Judgment in favor of SF Housing Trust as of 1/19/18 plus interest thereafter at 15% per annum on the principal amount of 10,000 |
| $27,662.69 | Judgment in favor of Zocalo as of 1/19/18 plus interest thereafter at 8.75% per year |
| 27,475.29[11] | Accrued assessments and attorneys' fees due Zocalo |
| TOTAL: $216,261.02 | |

Thus, without considering the HOP Lien or SF Housing Trust's right of first refusal, Debtor has equity in the Property if the Property is sold through foreclosure.

        (2)      Exercise of the Right of First Refusal

SF Housing Trust filed a separate complaint against the Debtor in state court seeking specific performance of its right of first refusal under the Homeowner HOP Agreement and removed that action to the United States District Court for the District of New Mexico ("District

---

[10] *See In re Miller*, No. 10-25453-MER, 2012 WL 6041639, at *13-14 (Bankr. D. Colo. Dec. 4, 2012) (debtor's admissions in schedules A and D made under penalty of perjury as to the value of property and the lien amounts demonstrated that the liens exceeded the value of the property so that creditor established the debtor had no equity in the property), *aff'd sub nom. Miller v. Deutsche Bank Nat'l Tr. Co.*, No. 12-CV-03279-PAB, 2013 WL 4776054 (D. Colo. Sept. 4, 2013), *aff'd sub nom. In re Miller*, 577 Fed. App'x 849 (10th Cir. 2014).

[11] This amount is included assuming that Zocalo is entitled to a lien against the Property for unpaid assessments and attorneys' fees under N.M.S.A. 1978, § 47-7C-16 (2020). There is no evidence before the Court that Zocalo has filed a lien against the Property for the assessments and attorneys' fees that accrued after the entry of the State Court Judgment.

Court"). In March of 2018, the District Court entered summary judgment in favor of SF Housing Trust granting SF Housing Trust's request to compel arbitration under the terms of the Homeowner HOP Agreement (¶ 3.4) providing for binding arbitration of the purchase price under the right of first refusal. *See* Exhibit 12.

The Homeowner HOP Agreement contains conflicting provisions regarding the purchase price under the right of first refusal. Paragraph 3.4 provides that the purchase price "shall be equal to the appraised price at the time of sale less the Interest Component."[12] Under that provision, the purchase price is not reduced by the HOP Lien amount. On the other hand, paragraph 2.6 of the Homeowner HOP Agreement obligates the Debtor, if the Debtor intends to sell the Property, to inform any prospective purchaser that the HOP Lien "gives the City and its agents a right to exercise its right of first refusal and repurchase of the HOP Home at the fair market value less the amount of the [HOP] Lien and the Interest Component[,]" and that "[t]he [HOP] Lien and Interest Component will reduce the total amount payable to the HOP Homebuyer upon resale by the lien amount if the HOP Home is sold or transferred during the 30 year Lien term."[13] In any event, there is no evidence before the Court establishing the current appraised value of the Property or the current amount of the Interest Component. Therefore, the Court cannot determine the right of first refusal price.

(3)     Debtor's Voluntary Sale of the Property

To sell the Property, the Debtor must either pay the HOP Lien and Interest Component, or sell the Property to a buyer who, with the City of Santa Fe's consent would assume the HOP Lien. [14] However, in certain circumstances, the City would forgive part of the HOP Lien.[15] The

---

[12] Homeowner HOP Agreement, ¶ 3.4.
[13] Homeowner HOP Agreement, ¶¶ 2.6.C. and 2.6.F.
[14] Homeowner HOP Agreement, ¶¶ 2.4, 2.8B.
[15] Homeowner HOP Agreement, ¶ 2.8A.

-8-

evidence before the Court does not establish how much, if any, of the HOP Lien would be forgiven.

DISCUSSION[16]

SF Housing Trust and Zocalo seek relief from the automatic stay under § 362(d)(2)[17] on the ground that Debtor has no equity in the Property and the Property is not necessary to an effective reorganization. Alternatively, SF Housing Trust and Zocalo seek relief from the automatic stay for "cause" under § 362(d)(1)[18] because they allege Debtor filed this fourth bankruptcy case in bad faith.

I.      WHETHER STAY RELIEF SHOULD BE GRANTED ON THE GROUND THAT DEBTOR HAS NO EQUITY IN THE PROPERTY AND THE PROPERTY IS NOT NECESSARY TO AN EFFECTIVE REORGANIZATION

As stated above, the HOP Homeowner Agreement contemplates three scenarios in which the Property may be sold: (1) in a foreclosure sale, (2) upon the City of Santa Fe's [now SF Housing Trust's] exercise of the right of first refusal, or (3) by the Debtor in a voluntary sale. The Court will examine whether Debtor has equity in the Property under any of these scenarios. To make this assessment, the Court must take into account all secured claims against the subject property, even if such claims are not held by the party seeking relief from the automatic stay. *See In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 207 (3d Cir. 1995) ("[*A*]*ll* liens are considered in

---

[16] The Discussion discusses provisions in the Homeowner HOP Agreement not specifically set forth in the Findings of Fact section of this Memorandum Opinion. Such facts are incorporated into the Findings of Fact section of this Memorandum Opinion.

[17] Section 362(d)(2) provides:

    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

        (2) with respect to a stay of an act against property under subsection (a) of this section, if—

            (A) the debtor does not have an equity in such property; and

            (B) such property is not necessary to an effective reorganization[.]

[18] Section 362(d)(1) provides that stay relief shall be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"

-9-

calculating equity retained by the debtor under section 362(d)(2) . . . ") (emphasis in original).[19]
SF Housing Trust and Zocalo, as the parties seeking relief from the automatic stay, bear the
burden of proving Debtor's lack of equity in the Property.[20]

Aspects of the City of Santa Fe Housing Opportunity Program, under which Debtor
purchased the Property, and Debtor's argument that the HOP Lien and SF Housing Trust's right
of first refusal have been discharged, affect the equity analysis. So before examining whether
Debtor has equity in the Property under any of the three scenarios, the Court will review relevant
parts of the Housing Opportunity Program and address Debtor's discharge argument.

A. *Debtor's purchase of the Property under the*
*City of Santa Fe Housing Opportunity Program*

Debtor purchased the Property in 2002 under the City of Santa Fe Housing Opportunity
Program ("HOP"). The purpose of the HOP was to provide and maintain affordable housing in
the Santa Fe area.[21] Under the HOP, a developer ("HOP Developer") would enter into an
agreement with the City of Santa Fe ("Developer HOP Agreement") that required the HOP
Developer to include in its HOP housing development a certain number of affordable housing
units ("HOP homes") to be sold to eligible buyers at a considerable discount from the market
price.[22] A HOP Developer selling a HOP home was required to record in the real property
records of Santa Fe County, a deed, form of deed restriction, restrictive covenants or other legal

---

[19] *In re 3H River Turf Farm, LLC*, 414 B.R. 751, 754 (Bankr. D. Utah 2009) ("'[E]quity' in § 362(d) means that the Court must consider all liens and encumbrances against the Real Property."); *In re Steffens*, 275 B.R. 570, 577 (Bankr. D. Colo. 2002) ("[A]ll of the liens against the property must be considered in determining whether the Debtors have equity in the property under § 362(d)(2)(A).").
[20] § 362(g) ("In any hearing under subsection (d) . . . the party requesting such relief has the burden of proof on the issue of the debtor's equity in property[.]"); *Steffens*, 275 B.R. at 574 ("Section 362(g) provides that the party requesting relief has the burden of proving a lack of equity . . . .").
[21] *See* Santa Fe, NM, Municipal Code, § 26-1.3 (2004) (The HOP shall "[i]ncrease the supply of affordable housing within the Santa Fe area for residents and businesses[;]" and "[e]nsure that residents and future generations can afford to reside within the Santa Fe area[;]" among other states purposes).
[22] Santa Fe, NM, Municipal Code, §§ 26.1.17, 26.1.18, 26.1.19 (2004).

-10-

instruments to fulfill the requirements under the HOP imposing controls on occupancy and subsequent resales of HOP homes.[23] The required resale controls were to consist of mortgage liens or shared appreciation and right of first refusal requirements.[24] The recording of a document or documents imposing the resale controls would create obligations that would run with the property.[25]

To protect the affordable housing goals of the HOP,[26] the Homeowner HOP Agreement between the City of Santa Fe (and now the SF Housing Trust as the City's assignee) and Debtor, recorded in the real property records of Santa Fe County, imposed resale controls with respect to the Property. The resale controls are implemented by the creation of a "HOP Lien" and a right of first refusal in favor of the City described as included within the HOP Lien.[27] The Homeowner HOP Agreement also provides for shared appreciation rights between the City of Santa Fe and Debtor implemented by creating a concept known as an "Interest Component."[28]

Under the Homeowner HOP Agreement, the Debtor accepted the HOP Lien against the Property[29] in the amount of $102,045.00. That amount is equal to the difference between the fair market value of the Property when Debtor purchased it and the discounted purchase price Debtor paid.[30] Consistent with the HOP, the Homeowner HOP Agreement provides that the:

> The [HOP] Lien shall run [with the land] for 30 years from the date of purchase of the HOP Home by the HOP Homebuyer or until such time as

---

[23] Santa Fe, NM, Municipal Code, § 26.1.20 (2004).
[24] *Id.*
[25] *Id.*
[26] Homeowner HOP Agreement, ¶ ¶ 2.5, 2.6(a).
[27] *See, e.g.*, Homeowner HOP Agreement, ¶¶ 1.H, 1.I, 2.1, 2.6.C, 2.8, and 3.1.
[28] Homeowner HOP Agreement, ¶ 1.I.
[29] Paragraph 2.1 of the Homeowner HOP Agreement provides that the HOP Homebuyer accepts the HOP Lien created pursuant to the Developer HOP Agreement. The Developer HOP Agreement is not in evidence.
[30] "Interest Component" defined in the Homeowner HOP Agreement in ¶ 1.I, provides an example that shows the amount of the HOP Lien is equal to the discount of the original purchase price to the HOP Homebuyer from the original fair market sales price.

the City exercises its right of first refusal or purchase under this Agreement

. . . .

Homeowner HOP Agreement, ¶ 2.3.[31]

Without the HOP Lien and SF Housing Trust's right of first refusal, the Debtor has equity in the Property. Thus, whether there is equity in the Property depends on whether the HOP Lien or right of first refusal encumbers the Debtor's interest in the Property.

Debtor asserts that this Court is the only Court that can determine the nature, extent, and priority of the HOP Lien, but that such a determination cannot be decided in the context of a motion for relief from stay because it requires an adversary proceeding. Debtor is incorrect. "[A] relief from stay proceeding is by its nature a cursory or summary proceeding." *In re Utah Aircraft Alliance*, 342 B.R. 327, 332 (10th Cir. BAP 2006). In the context of a stay relief proceeding, the Court need only determine whether the SF Housing Trust has a colorable claim to a HOP Lien and right of first refusal that encumbers the Property as necessary to determine whether the Debtor has equity in the Property and whether relief from the automatic stay should be granted.[32]

---

[31] *See also* Homeowner HOP Agreement, ¶ 4.1 (upon recordation of the Homeowner HOP Agreement, the HOP Lien will "legally attach, [and] run with the land . . . ."); Homeowner HOP Agreement, ¶4.2 (all agreements, rights and restrictions, including the HOP Lien, "shall run with the Property . . . .").

[32] *Utah Aircraft*, 342 B.R. at 332 (acknowledging that a stay relief proceeding "does not replace the need for filing an adversary proceeding" to determine the validity, priority, or extent of a creditor's lien, but "the court merely determines whether the movant has a colorable claim, i.e., a facially valid security interest" when considering a motion for relief from stay); *see also In re Griffin*, 719 F.3d 1126, 1128 (9th Cir. 2013) ("Given the limited nature of the relief obtained through this proceeding and because final adjudication of the parties' rights and liabilities is yet to occur, a party seeking stay relief need only establish that it has a colorable claim to the property at issue."); *In re Mullarkey*, 536 F.3d 215, 226–27 (3d Cir. 2008) (to the same effect); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994) (same).

-12-

B. *Neither the HOP Lien nor SF Housing Trust's right of first refusal was discharged in a prior bankruptcy case*

In resisting stay relief, Debtor asserts that the HOP Lien and right of first refusal contained in the Homeowner HOP Agreement must be disregarded in determining whether Debtor has equity in the Property. Debtor argues that the Homeowner HOP Agreement is an executory contract that was rejected by operation of law in connection with Debtor's prior bankruptcy case.[33] According to Debtor, the HOP Lien is not really a lien that encumbers the Property and SF Hosing Trust's right of first refusal is just a contract right. Debtor reasons that upon rejection of the Homeowner HOP Agreement, SF Housing Trust's rights and Debtor's obligations relating to the HOP Lien and right of first refusal were discharged and therefore are no longer enforceable. The SF Housing Trust counters that the Homeowner HOP Agreement is not executory, arguing that no performance by either party to the Homeowner HOP Agreement remains due. The Court need not decide whether the Homeowner HOP Agreement remains executory, because even if the Court accepts that the Homeowner HOP Agreement is an executory contract, the deemed rejection in one of Debtor's prior bankruptcy cases does terminate the Homeowner HOP Agreement or eliminate or discharge the HOP Lien or SF Housing Trust's right of first refusal.

Rejection of an executory contract only constitutes a breach of the contract. *See* § 365(g) ("[T]he rejection of an executory contract . . . constitutes a breach of such contract"). Rejection does not terminate the contract. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct.

---

[33] Pursuant to § 365(d)(1), "if the trustee does not assume or reject an executory contract . . . of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected." Because the chapter 7 trustee in Debtor's First Bankruptcy Case did not assume the Homeowner HOP Agreement, the Homeowner HOP Agreement, assuming it constitutes an executory contract, was deemed rejected in 2004, sixty days after the date of the order of relief in Debtor's first bankruptcy case.

-13-

1652, 1662 (2019). SF Housing Trust's right to enforce the HOP Lien under the Homeowner HOP Agreement had already been conferred on SF Housing Trust, the non-breaching party, prior to rejection. As the Supreme Court explained, the breaching party, here the Debtor, "has no ability, based on its own breach, to terminate the agreement." *Mission Product*, 139 S. Ct. at 1662. After rejection of the Homeowner HOP Agreement, and the deemed breach, SF Housing Trust retained its rights received under the Homeowner HOP Agreement. *See Mission Product*, 139 S. Ct. at 1662 (after rejection, the rights of the non-breaching counterparty survive). Consequently, rejection of the Homeowner HOP Agreement does not terminate the HOP Lien or SF Housing Trust's right of first refusal to purchase the Property. The issue then becomes whether the discharge injunction prevents the Santa Fe Housing Trust from enforcing the HOP Lien and right of first refusal.

The discharge injunction granted to Debtor in a prior bankruptcy case does not prevent the Santa Fe Housing Trust from enforcing the HOP Lien and right of first refusal. The discharge injunction arises only with respect to debts that are discharged.[34] The discharge Debtor received in her bankruptcy case in which the Homeowner HOP Agreement was rejected, if it is in fact an executory contract, did not discharge the HOP Lien or SF Housing Trust's right of first refusal to purchase the Property. The HOP Lien and SF Housing Trust's right of first refusal are *in rem* interests that run with the land.[35] The HOP Lien contained in the recorded Homeowner HOP Agreement is a form of encumbrance that runs with the land and functions as a resale control to effectuate the affordable housing purpose of the HOP.[36] Similarly, the right of first refusal is a

---

[34] *See* § 524(a) (effect of the discharge).
[35] *See* Santa Fe, NM, Municipal Code, § 26-1.20 (2004) (requiring the creation of an obligation that runs with the property to enforce resale controls to maintain the Property as affordable housing).
[36] *See* Homeowner HOP Agreement, ¶ 2.3 (the HOP Lien runs with the land for 30 years), ¶ 4.1 (the HOP Lien shall run with the land and "ensure that the purpose[s] of the HOP are met.").

-14-

form of servitude that likewise encumbers the Property and runs with the land. *See Restatement (Third) of Property (Servitudes)* § 1.1 (2000) ("(1) A servitude is a legal device that creates a right or obligation that runs with the land or an interest in land.").[37] The discharge does not discharge a creditor's *in rem* interests, such as a lien against real property or other encumbrances that run with the land. *See Dewsnup v. Timm*, 502 U.S. 410, 418 (1992) (confirming that liens on real property pass through bankruptcy unaffected); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991)("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*.").

Accordingly, the HOP Lien and right of first refusal created by the Homeowner HOP Agreement, which was recorded in the real property records of Santa Fe County, were not discharged in one of Debtor's prior bankruptcy cases. Therefore, the discharge injunction does not prevent SF Housing Trust from enforcing the HOP Lien and right of first refusal.

C.    *SF Housing Trust and Zocalo have not proven that Debtor has no equity in the Property in a foreclosure sale*

The State Court Judgment provides that SF Housing Trust, Zocalo, and Matrix are allowed to "bid the amount of their respective judgments, in part, or in its entirety, in lieu of cash at the sale[,]" and provides further that the sale of the Property by the special master will be "free and clear of all liens of the parties[.]"[38] SF Housing Trust's judgment amount set forth in the State Court Judgment does not include the HOP Lien. Consequently, the HOP Lien, including the right of first refusal, does not affect the amount for which Debtor may redeem the Property

---

[37] *See also* Homeowner HOP Agreement, ¶ 4.2 (the rights and restrictions set forth in the Homeowner HOP Agreement "shall run with the Property for the purpose of maintaining the HOP Home as affordable housing . . . .").
[38] State Court Judgment, Decretal ¶¶ K. and L.

-15-

following a foreclosure sale of the Property by the special master that extinguishes the HOP

Lien. Under these circumstances, neither the SF Housing Trust nor Zocalo have shown that

Debtor has no equity in the Property based on the redemption price as compared with the

Property's value. SF Housing Trust and Zocalo have not met their burden of establishing

Debtor's lack of equity in the Property should SF Housing Trust and Zocalo choose to complete

the foreclosure of the Property.

        D.    *SF Housing Trust and Zocalo have not proven that Debtor has no equity in the Property under the right of first refusal*

The State Court Judgment includes a finding that SF Housing Trust "exercised its right to

purchase the subject property pursuant to the HOP Agreement."[39] The Homeowner HOP

Agreement provides that "[t]he purchase price of the HOP Home under the Right of First Refusal

shall be equal to the appraised price at the time of sale less the Interest Component.[40] Elsewhere,

the Homeowner HOP Agreement suggest the right of first refusal price is the "fair market value"

less the amount of the HOP Lien *and* the Interest Component."[41] If the parties cannot agree on

the purchase price, the matter is to be resolved by binding arbitration.[42] There is no evidence of

the purchase price SF Housing Trust will be required to pay to complete its purchase of the

Property under its right of first refusal. Depending on the purchase price under the right of first

refusal, the Debtor may have equity in the Property, even if the HOP Lien amount must be taken

into account.[43]

---

[39] State Court Judgment, ¶ 3.E.
[40] Homeowner HOP Agreement, ¶ 3.4.
[41] Homeowner HOP Agreement, ¶ 2.6.C and ¶ 2.6.F.
[42] Homeowner HOP Agreement, ¶ 3.4.
[43] If the parties determine the purchase price for the right of first refusal under the Homeowner HOP Agreement through arbitration, it is unclear whether Debtor would be bound by her $239,000 valuation of the Property in this bankruptcy case, and whether the price would be based on the "fair market value" of the Property less the HOP Lien and Interest Component (*See* Homeowner HOP Agreement, ¶ 2.6(C)) or

-16-

E. *SF Housing Trust and Zocalo have not proven that Debtor has no equity in the   Property in a voluntary sale*

The Court has found that to sell the Property, the Debtor must either pay the HOP Lien and Interest Component, or sell the Property to a buyer who, with the City of Santa Fe's [now SF Housing Trust's] consent would assume the HOP Lien. [44] However, in certain circumstances, the City [SF Housing Trust] would forgive part of the HOP Lien. [45] The evidence before the Court does not establish how much, if any, of the HOP Lien would be forgiven. Therefore, the Court cannot determine whether Debtor has equity in a voluntary sale if SF Housing Trust and Zocalo elect not to complete the foreclosure and SF Housing Trust does not buy the Property under the right of first refusal.

F. *SF Housing Trust and Zocalo have not proven Debtor has no equity in the property*

For the foregoing reasons, this Court cannot determine based on the evidence before it whether Debtor has equity in the Property. Because SF Housing Trust and Zocalo bear the burden of proving Debtor's lack of equity in the Property, SF Housing Trust and Zocalo are not entitled to relief from the automatic stay under § 362(d)(2).

II. WHETHER "CAUSE" EXISTS TO TERMINATE THE AUTOMATIC STAY

A creditor may also obtain relief from the automatic stay under § 362(d)(1) for "cause. including the lack of adequate protection[.]" However, "[w]hile cause under § 362(d)(1) includes 'the lack of adequate protection of an interest in property,' it is not so limited." *In re Busch*, 294

---

whether the price would be based on an "appraised price" at the time of the sale less only the Interest Component (*See* Homeowner HOP Agreement, ¶ 3.4).
[44] Homeowner HOP Agreement, ¶¶ 2.4, 2.8B.
[45] Homeowner HOP Agreement, ¶ 2.8A.

-17-

B.R. 137, 140 (10th Cir. BAP 2003). The Bankruptcy Code does not otherwise define "cause."[46]

Filing a bankruptcy case in bad faith may constitute "cause" for relief from the automatic stay.[47]

A creditor seeking relief from the automatic stay for "cause" bears the initial burden of going forward to demonstrate sufficient grounds to lift the stay. *See In re DB Capital Holdings, LLC*, 454 B.R. 804, 816 (Bankr. D. Colo. 2011) ("[T]he initial burden going forward to show the grounds that compel the lifting of the stay rests with the creditor."). Once that burden has been met, the ultimate burden of proof rests with the debtor under the cause ground for stay relief to show that the stay should remain in place. *See* § 362(g) (the party opposing stay relief has the burden of proof on all issues except the issue of the debtor's equity in property); *Busch*, 284 B.R. at 140-41 ("The moving party has the burden to show that 'cause' exists to lift the stay, after which the burden shifts to a debtor to demonstrate why the stay should remain in place."). Ultimately, whether the Court should grant relief from the automatic stay for "cause" "is within the sound discretion of the Court determined on a case by case basis."[48]

---

[46] *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987) (acknowledging that "there is no clear definition of what constitutes 'cause'" for relief from the automatic stay) (quoting *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986)); *Busch*, 294 B.R. at 140 ("'[C]ause' is not further defined in the Bankruptcy Code . . . ."); *In re Elkins*, No. 16-51491, 2016 WL 6892728, at *3 (Bankr. E.D. Ky. Nov. 22, 2016) ("'Cause' is not defined in § 362 or elsewhere in the Code.").

[47] *In re JE Livestock, Inc.*, 375 B.R. 892, 897 (10th Cir. BAP 2007) ("Among the factors to be considered in determining whether the automatic stay should be modified for cause are the good or bad faith of the debtor and the injury to the movant if the stay is not modified."); *In re Walck*, No. 11-37706 MER, 2012 WL 2918492, at *5 (Bankr. D. Colo. July 17, 2012) ("The Tenth Circuit Court of Appeals has recognized bad faith as an independent 'cause' for relief under § 362.") (citing *In re Nursery Land Development, Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996)); *In re Springs Hospitality, Inc.*, No. 06-1331 HRT, 2006 WL 2458679, at *8 (Bankr. D. Colo. Aug. 22, 2006) ("A bad faith filing of a bankruptcy proceeding constitutes cause of relief from the automatic stay under § 362(d)(1).") (citing *In re Pacific Rim Investments, LLP*, 243 B.R. 768, 771 (D. Colo. 2000)).

[48] *See Busch*, 294 B.R. at 140 (termination of the stay for cause "is a discretionary determination made on a case by case basis"); *see also Pursifull*, 814 F.2d at 1506 ("[D]iscretionary relief from the stay [for 'cause'] must be determined on a case by case basis.") (quoting *Castlerock Properties*, 781 F.2d at 163); *In re Jones*, No. 3:19-BK-56-JAF, 2019 WL 2707717, at *3 (Bankr. M.D. Fla. June 27, 2019) ("[T]he determination of whether to grant relief from the stay based on cause is a discretionary one which is made on a case by case basis.") (citing *In re Boardwalk, Inc.*, 520 B.R. 126, 132 (Bankr. M.D. Fla. 2014)).

-18-

A.    *Cause exists to modify the automatic stay*

The surrounding facts and circumstances demonstrate that sufficient "cause" exists to grant SF Housing Trust and Zocalo relief from the automatic stay. Debtor has been resisting SF Housing Trust and Zocalo's efforts to foreclose the Property and for SF Housing Trust to exercise its right of first refusal since at least 2016. Debtor has not made any payments on the first mortgage now held by SF Housing Trust, on SF Housing Trust's junior mortgage, or to Zocalo since that time. She has already obtained a discharge of her personal liability to SF Housing Trust in her bankruptcy case filed in 2004, and to Zocalo for debts she owed at the time she filed her 2012 bankruptcy case. In 2018 Debtor reopened her prior two chapter 7 cases in a failed effort to reimpose the automatic stay to protect the Property from foreclosure. In 2019, Debtor filed a chapter 13 case to protect the Property from foreclosure. Debtor ultimately converted the case to chapter 7 in the face of a motion to dismiss. And in 2020, Debtor filed the chapter 7 case now pending before the Court.

While the Court is sympathetic to Debtor's efforts to save her home, keeping the stay in place at this point to prevent SF Housing Trust and Zocalo from exercising their *in rem* remedies against the Property would not serve a meaningful bankruptcy purpose. Chapter 13, not chapter 7, is the bankruptcy chapter designed to enable individuals who are behind on their home mortgages to keep their homes. It requires a debtor to bring prebankruptcy mortgage arrearages current by making equal monthly payments for a period not to exceed five years.[49] Since Debtor has not made a mortgage payment since 2016, and because her current income is only $650.00 per month, she is not financially able to satisfy those chapter 13 requirements. In chapter 7, by contrast, there is no mechanism for debtors to restructure their debts. Property in which a debtor

---

[49] *See* § 1322(b)(5) (providing for curing defaults on secured claims); § 1325(b)(4) (establishing the applicable commitment period).

has non-exempt equity is sold for the benefit of creditors, and creditors are permitted to exercise

their remedies against fully encumbered property either by obtaining relief from the stay or upon

the closing of the bankruptcy case when the stay is terminated by operation of the Bankruptcy

Code.[50] Even if the Court were to deny the motions for relief from stay, SF Housing Trust and

Zocalo will obtain relief from the stay by operation of law when Debtor receives a chapter 7

discharge and the case is closed.[51] That could occur as early as mid-December 2020 if no

objections to Debtor's discharge or to the dischargeability of any debts are filed by December 7,

2020.[52]

Debtor contends that if she prevails in her appeal of the State Court Judgment, she will be

able to realize equity in the Property. Yet, the State Court Judgment is a final judgment that

included a partial adjudication of SF Housing Trust's rights under the Homeowner HOP

Agreement.[53] Debtor's appeal of the State Court Judgment has not been stayed. As discussed

above, Debtor may indeed be able to recover equity in the property depending on the price

determined for SF Housing Trust's exercise of its right of first refusal. But while the stay

remains in place, Debtor cannot pursue her appeal and the parties cannot proceed to arbitrate the

---

[50] *See* § 362(c)(2)(A) (the automatic stay in an individual chapter 7 case continues until "the time the case is closed[.]").

[51] *Id.*; § 362(c)(2)(C) (the automatic stay in an individual chapter7 case continues until "the time a discharge is granted or denied[.]").

[52] *See* Doc. 8 (Meeting of Creditors, reporting December 7, 2020 as the deadline to object to discharge or dischargeability of debt).

[53] *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (explaining that a judgment is final for purposes of appeal when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.") (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

amount of the right of first refusal price.[54] And under the circumstances of this case, filing a

bankruptcy is not an appropriate substitute for filing a supersedeas bond.[55]

Taking into account all of the facts and circumstances as a whole, the Court has

determined that cause exists to grant relief from the automatic stay.

CONCLUSION

Based on the foregoing, the Court will grant SF Housing Trust and Zocalo relief from the

automatic stay. Even though SF Housing Trust and Zocalo have not met their burden of

establishing Debtor's lack of equity in the Property, the surrounding facts and circumstances,

taken as a whole, establish "cause" for relief from the automatic stay under § 362(d)(1). Debtor's

arguments in support of keeping the automatic stay in place are insufficient to overcome the

grounds for modifying the automatic stay to allow SF Housing Trust and Zocalo to pursue their

*in rem* nonbankruptcy remedies with respect to the Property. The Court will enter separate orders

consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  December 2, 2020

---

[54] *See TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 497 (10th Cir. 2011) (holding that the automatic stay applies to appeals in proceedings originally filed against the debtor, "regardless of whether the debtor is the appellant or the appellee") (quoting *Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir. 1982)).

[55] *See In re Pomodoro Rest.*, 251 B.R. 441, 1999 WL 282735, at *3 (10th Cir. BAP 1999) (unpublished disposition) (recognizing split in case law as to whether filing a bankruptcy as a substitute for posting a supersedeas bond constitutes bad faith, and agreeing that the court must consider the surrounding circumstances, including whether the debtor can afford to post a supersedeas bond and still remain in business); *In re Porter*, 371 B.R.739, 748 (Bankr. E.D. Pa. 2007) (finding that debtor filed his bankruptcy petition in bad faith to circumvent supersedeas bond requirements for obtaining stay of district court judgment, constituting "cause" to terminate the automatic stay).

-21-

COPY TO:

Nephi Hardman
Nephi D. Hardman Attorney at Law, LLC
9400 Holly Ave NE Bldg 4
Albuquerque, NM 87122

Clifford C Gramer, Jr
Attorney for SF Housing Trust
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

Christopher M. Grimmer
Attorney for Zocalo
150 Washington Ave., Suite 201
Santa Fe, NM 87501